Mason, J.
By amendments duly allowed before trial the plaintiffs now are Associates Investment Co. and Simeon Poresgy, doing business as Simmons Q-arage Co., and the sole defendant is the Bankers & Shippers Insurance Co. Originally said Poresgy was joined as a defendant, and he is so described in the defendant’s statement of the issues. This is an action of contract to recover damages under a policy of fire insurance issued by the defendant to said Simeon Poresgy d/b/a Simmons Motor Sales Co., and by indorsement made payable to the Associates Investment Co. of South Bend, Indiana, as their interests may appear. A photostatic copy of this policy is annexed to the report. The plaintiffs filed separate declarations. The answer is a general denial, and further alleges that the claimant, Simeon Poresgy, his agents or servants, altered the provisions, terms and conditions in the policy declared upon without the knowledge or consent of the defendant.
*66 The policy in question was issued to Simmons Motor Sales Co. and was against loss by “Fire, Lightning and Transportation $2,000” and also “Theft, Robbery and Pilferage $2,000.” It was an “Automobile Dealer’s Policy (Form No. 2) Blanket Forrm” The policy showed—

“Limit of Liability Location Rate Premium

$2000 on new automobiles at 41 Turnpike Rd.,
Shrewsbury ..............................$42.00
$2000 on used automobiles at”
The policy was dated April 1, 1936.
The following Loss Payable Endorsement, duly executed by F. L. Denno, authorized agent, was issued and attached to the policy: “This certifies.that loss, if any, for which this Company may become liable, under this policy, is payable to Insured named above, and Associates Investment Company of South Bend, Indiana, as their interests may appear. This endorsement is subject to all conditions and clauses which are now or may hereafter be attached to regular policy. In the event the Original Policy is can-celled, both parties mentioned herein will be given reasonable written notice.”
On November 1,1936, a fire occurred damaging both new and used automobiles covered by this policy.
No. question is now raised as to proof of loss, reference to arbitration, or any other defence except those raised by the defendant’s requests for rulings hereinafter discussed.
The issues are thus stated in the .defendant’s brief—
1. Is the defendant Simeon Poresgy d/b/a Simmons Motor Sales Co. entitled to recover for damages to the two new 1937 Plymouth cars under the terms and conditions of the policy.
*67 A. Is the plaintiff entitled to recover for damages to the two new 1937 Plymouth cars under the terms of the Policy and the Loss Payable Endorsement, and have the plaintiffs any greater rights under the policy than the defendant Simeon Poresgy?
2. Was the defendant Simeon Poresgy covered for damages to the used cars and is he entitled to recover under the contract of insurance for damage to used cars?
On the first issue the defendant calls attention to the following provisions of the policy—
“This policy covers automobiles owned by the assured and held for sale or used in repair service, but excludes automobiles sold under a Conditional Sale, Mortgage or Lien Agreement. This policy also covers the equity of the assured only in new automobiles consigned to the assured for sale, the title to which is held by others; but in case of loss on any such automobile this company shall not be liable for a greater proportion thereof, than the amount of the Assured’s equity in such automobiles bears to the value of such automobile at the time of loss.”
“This Company’s liability for loss or damage to automobiles insured hereunder shall be in accordance with the General Conditions of this Policy and of this form, and shall not include the Assured’s prospective profits or overhead charges of any nature whatsoever.”
The right of the plaintiff Associates Investment Co. to recover is based upon that of the plaintiff Simeon Poresgy to whom the policy was issued. The loss payable clause did not enlarge the defendant’s liability.
The defendant makes the claim that at the time of the fire said Poresgy had no financial interest in the new cars damaged by the fire.
It appeared that the Associates Discount Corporation purchased and turned over to Simeon Poresgy, three new *68 Plymouth cars,, and took from him- a trust receipt dated October 21, 1936.. The cars are. described in the receipt by type,: mo.del, year and numbers.. In a column headed “Amount to- Release from Trust” there' was. placed an amount opposite each of the cars; These amounts were respectively $562.05, $577.38 and $658.35. Below the signature, on the- same paper, but separated by a perforated line, was a demand draft for $1,797.78 accepted by the plaintiff, Poresgy. It will be noted that the amount of this draft and acceptance is exactly equal to the above mentioned sums set against the several automobiles. This trust receipt and the draft accompanying it were duly assigned to the plaintiff, Associates Investment Co. • ■
The first and third automobiles described in the trust receipt, were the ones which were damaged by fire. $562.05 and $658.35 were the wholesale prices of these cars, and these prices had been paid wholly by the Associates Discount Corporation.
Under the Uniform Trust Receipts Act (Acts of 1936 c. 264) the legal effect of this transaction was to give Simeon Poresgy the rights of a pledgor of the automobiles, and to give the Associates Discount Corporation, and its. assignee, the plaintiff, Associates Investment Co., the rights of a pledgee.- The plaintiff, Simeon Poresgy’s interest in the cars was not simply a right to buy them of the plaintiff, Associates Investment Co., for the prices fixed in the trust receipt; but his interest was the full value of the cars, although he was accountable to the plaintiff, Associates Investment Co. for so much of their value as might be necessary to extinguish his debt to that company, for which debt the automobiles were pledged.
The retail values of the ■ cars-were respectively $661.90* and $702.00. After the fire the plaintiff Associates Investment Co. sold these two cars, and thereby salvaged the sum *69 of $370.00. The Trial Court found that the damage to these cars was $1,093.90, being the amount of their retail value less the amount of the salvage.
On the second issue raised by the defendant, that as to the liability of the defendant for damage to used cars, the controversy is as to the validity of the. policy in question in its present form. ■
The evidence of the plaintiff was in substance as follows: On or about April 1, 1936, the plaintiff, Poresgy, saw his insurance broker, one Cashner, and ordered a policy for fire and theft to cover automobiles located on the premises at 41 Turnpike Road, Shrewsbury, Mass. That the plaintiff Poresgy was at that time an automobile dealer at said address; that he told Cashner that he desired coverage in the amount of two thousand (2000) dollars on new and used cars. The total amount of the policy to be two thousand (2000) dollars. That within a few days a policy was issued and delivered by the defendant company to the office of Cashner. That at that time it was discovered that there was no coverage on used cars; that Cashner called one Denno, who was admitted to be the general agent of the defendant Insurance Company. That Cashner called to Denno’s attention the fact that used cars were not covered and that Denno told Cashner to fill in two thousand dollars ($2000.00) against the used car clause in the policy, but not to change the total amount of the policy. That Cashner did insert two thousand dollars ($2000.00) against used car coverage and delivered policy to plaintiff Poresgy.
There was also evidence that Denno did not authorize the insertion of any figures by Cashner.
On this issue the Trial Court made the following finding—
“Upon all the evidence I find that Francis L. Denno was the general agent of the defendant insurance company. I *70 find that Denno authorized the insertion made by Cashner in the policy of two thousand dollars ($2000.00) covering on used cars. I find that Denno had the apparent authority to make such correction. I find that the order given by Poresgy included new and used cars.”
Notwithstanding this finding of fact by the Trial Court the defendant contends that Denno himself had no right to orally vary the policy. The defendant calls attention to the following clauses in the policy—
Policy Provision. “If the assured shall request, and this Company shall accept, any increase or reduction in the amount of insurance under this policy, such increase or reduction shall be endorsed hereon, and the additional or return premium therefor shall be calculated at pro-rata of the agreed rates.”
“This policy is made and accepted subject to the provisions, exclusions, conditions and warranties, set forth herein or endorsed hereon, and upon acceptance of this policy, the assured agrees that its terms embody all agreements then existing between himself and this Company or any of its agents relating to the insurance described herein, and no officer, agent or other representative of this Company shall have power to waive any of the terms of this policy unless such waiver be written upon and attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured unless so written or attached. This policy shall be void in event of violation by the assured of any agreement, condition ór warranty contained herein or in any rider now or hereafter attached hereto.”
After ■ delivery and acceptance of the policy the . agent would have no right to alter it except in the manner pre-. scribed in the .policy. But here at the time of. the. insertion of the figures “$2,000.” before the printed words “on .used *71 automobiles at” the paper had not yet become an agreement between the parties. It was sent to .Cashner as a compliance with his request for a policy. Instead of accepting it he called attention to the omission of any figure as to used automobiles. Thereupon he was orally authorized to make the mechanical change necessary to make the instrument conform to his original order. Denno had authority to issue a policy which would cover both new automobiles and used automobiles, although he had no authority to change an accepted policy on new automobiles into a policy on new automobiles and used automobiles except in writing and in conformity with the policy. This distinction between a change in the policy before acceptance and a change after acceptance is clearly recognized in Gloucester Manufacturing Co. v. Howard Fire Insurance Co., 5 Gray 497. In this case at page 502 it is said — “On the last named day, the plaintiffs, upon examination of the policy as originally prepared, refused to take it in the form in which it then was. At that time no policy had been delivered. These agents were clothed with general powers, as to filling up and issuing policies. Having the authority to make an original contract of insurance, with terms similar to those found in this policy, they had authority, before the delivery of the policy, to enlarge it from its first draft, by a change or modification of the description of the property insured, so as to embrace the case of a building unfinished, but then in the process of construction. This they did, and the policy in this form was accepted by the plaintiffs; and, as between insurers and insured, this contract was entered into on the 8th of December, and is to be treated as of that date.”
Denno had the right to issue the policy in its present form. While Denno could not have authorized Cashner to issue the policy, he could authorize Cashner to perform *72 a clerical or mechanical act not involving .the exercise of discretion on Cashner’s part. See Vance on Insurance, Second edition, page 425.
We find no prejudicial error and the report must be dismissed.